(No. 36983.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NORRIS W. ANDERSON, Plaintiff in Error.

*Opinion filed March 18, 1964.*

ALFORD R. PENNIMAN, of Rockford, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM R. NASH, State's Attorney, of Rockford, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and WILLIAM H. SNIVELY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Defendant, Norris W. Anderson, was tried for burglary by a jury in the circuit court of Winnebago County. He was found guilty and was sentenced to the penitentiary for a term of not less than 5 nor more than 20 years. On this writ of error he contends that his guilt was not established beyond a reasonable doubt and complains of certain trial errors.

A bakery in Rockford was forcibly entered through the rear door between 5:30 in the afternoon of March 10, 1960, and 4:30 the following morning. Approximately $20 in

half dollars, quarters, dimes, nickels and pennies was taken from the cash register.

No direct evidence was produced linking defendant with the burglary. Circumstantial evidence upon which the conviction was obtained follows. Defendant, unemployed and on relief, lived in a hotel near the bakery, and frequented a restaurant 75 feet from the bakery and a tavern some 50 feet away. He spent $6 to $9 in change at the tavern between 9:00 P.M. and 1:00 A.M. the night of the burglary, and the following morning exchanged $13 in change for paper money at the restaurant. On March 5 and again on March 10 he had conversations with a friend, Schubbe, who worked at the restaurant, in which defendant asked if he knew where any money was kept which they could get.

The prosecution directs attention to the fact that defendant was in the immediate vicinity of the burglarized premises during a major portion of the relevant time period. This is not unusual since he lived near the bakery, ate his meals at the nearby restaurant and spent his leisure hours in the tavern. He admittedly passed the bakery a number of times during the critical period but his passage was along the front of the premises, not the back where the illegal entry was made.

Defendant explained his affluence as a gift of $10 from his father, a loan of $2 from the wife of the restaurant owner and the fortuitous winning of $12 in silver during the last pot of a poker game in a hotel. The same explanation of poker winnings was given to three different people, including a police officer, without refutation. The officer did testify, however, that he asked if defendant had won two fives and one dollar bill in the same form (bills) and defendant had said yes. The gift and loan were certified by the donor and lender, respectively. About one month later defendant was again picked up and questioned about the poker game. He then admitted for the first time that it was in a room at the Lawrence Hotel, but still refused to

divulge the names of the other participants. Defendant's testimony concerning the poker game as the source of the funds was not contradicted or impeached nor did the police check defendant's story that the game was the source of the coins.

Defendant readily admitted the conversations with Schubbe about where money was kept but said he was joking or "kidding" and that they often said similar things jokingly. It is not clear whether defendant desired or intended to commit any burglary, but Schubbe specifically testified that defendant did not mention the bakery or any other certain place which might be victimized.

The prosecution correctly states the rule that the determination of the credibility of witnesses and the weight to be given their testimony is committed to the jury and we will not substitute our judgment for that of the jury merely because the evidence is conflicting. It is basic, however, that if, after due consideration, we are of the opinion that defendant's guilt has not been established beyond a reasonable doubt, it is our duty to reverse. (*People* v. *Jefferson,* 24 Ill.2d 398; *People* v. *Butler,* 28 Ill.2d 88.) This record leaves such a doubt and the conviction is reversed. In view of this holding it is unnecessary to consider the alleged trial errors.

The judgment of the circuit court of Winnebago County is reversed.

*Judgment reversed.*